UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO

**JAMES S. SELLS, Jr.**                                                                                    **PLAINTIFF**

**v.**                                                                     **CIVIL ACTION NO. 4:08-CV-P65-M**

**DARWIN DENNISON et al.**                                                                        **DEFENDANTS**

## MEMORANDUM OPINION

Plaintiff, James S. Sells, Jr., filed a *pro se*, *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 (DN 1). This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons set forth below, the action will be dismissed.

## I. SUMMARY OF CLAIMS

When he filed his complaint, Plaintiff was a pretrial detainee at the Grayson County Detention Center. He sues Darwin Dennison, Grayson County Detention Center Jailer, in his official capacity. He also sues in their individual capacities: (1) Jason Woosley, Deputy Jailer; (2) Rita Wilson, Head Nurse; and (3) unnamed nurses at Grayson County Detention Center.

The complaint contains the following allegations. On May 21, 2007, Plaintiff received a concussion during an attack from another inmate. He states that on the next day he complained of vertigo to a doctor he was seeing about osteoporosis, Dr. Starsiak. Dr. Starsiak explained that vertigo was not his speciality and he should seek further aid if it persisted. On May 31, 2007, he put in a call slip to be seen for vertigo, and on June 2, 2007, a nurse diagnosed him as having an inner ear infection. On June 5, 2007, a doctor at Grayson County Detention Center was unable to look into his ears because of a broken light on the otioscope and recommended that Plaintiff go back to the hospital for further tests. Plaintiff was sent back to Dr. Starsiak, even though Dr.

Starsiak did not deal with vertigo and again recommended that Plaintiff be seen by a neurologist. Plaintiff was seen by a neurologist on July 6, 2007, who diagnosed him with Benign Paroxysmal Positional Vertigo (BPPV) and prescribed medicine, which did not relieve the vertigo. He states that after taking the medicine for three weeks he told the nurses that he was still having vertigo. He alleges that on October 4, 2007, he put in a sick call request for continued dizziness and a nurse treated him for another ear infection and referred him to an in-house doctor. Plaintiff states that four days later he saw the in-house doctor, who referred him back to the neurologist. Two days later, he saw the neurologist who wanted to prescribe Valium but the neurologist was told by the guard that Valium would not be allowed and prescribed a patch for seasickness instead.

On November 13, 2007, Plaintiff again went to sick call and again was diagnosed with an ear infection. On December 2, 2007, he went to sick call where Nurse Wilson asked what more he wanted. Nurse Wilson was very rude to him, which prompted him to ask to see Deputy Jailer Woosley. In a meeting with Deputy Jailer Woosley, Plaintiff complained about the treatment he had received from Nurse Wilson, and the Deputy Jailer asked him what he would like to have done to cure his vertigo. Plaintiff stated that he wanted a second opinion and that he had been told he might benefit from seeing an ENT. The next day, Plaintiff saw a nurse practitioner in a doctor's office; he received an eye examination and a hearing test.

In January 2008, Plaintiff was sent to Twin Lakes Medical Center for rehabilitation, where he was put through the "Epley Maneuver,"[1] which he was told by a therapist would take

---

[1] According to www.webmd.com, an Epley maneuver is an exercise used to treat BPPV. It is done with the assistance of a health professional or physical therapist, and a "single 10- to 15-minute session usually is all that is needed."

up to eight times to completely alleviate his symptoms. He was given a neck support for 48 hours to help complete the Epley Maneuver and an extra mat he asked for because the Epley Maneuver required sleeping at a 45-degree angle.

He states that on January 17, 2008, the Grayson County Detention Center received a call from the U.S. Marshal's Office disapproving continuing physical therapy and that on January 18, 2008, the Grayson County Detention Center received a fax from the U.S. Marshal's Office disapproving continuing physical therapy.

On February 18, 2008, he wrote a request to the medical department as to why he had not been taken back to physical therapy and was told that the U.S. Marshal's Office had denied coverage for further physical therapy. He also states that his extra mat was confiscated in April 2008 during a routine cell search because, he was told, the mat was "only for 48 hours." He states that he continues to suffer from BPPV. As relief, Plaintiff wants monetary and punitive damages, as well as injunctive relief in the form of continuation of his physical therapy.

Plaintiff filed a letter which the Court has interpreted to be, in part, a supplement to his complaint. In that document, Plaintiff states that since filing his original complaint, he has been transferred to another prison facility, which he believes to be in retaliation for filing suit.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis

either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, ___, 127 S. Ct. 1955, 1974 (2007).

*Claims for injunctive relief*

Since filing this lawsuit, Plaintiff has informed the Court that he has been transferred to the Warren County Regional Jail (DN 10). Thus, his request for injunctive relief is moot because he is no longer incarcerated at Grayson County Detention Center. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

*Claims against the jailer*

Plaintiff sues the jailer at Grayson County Detention Center in his official capacity. Suit brought against the jailer in his official capacity is the same as suing the jail. However, the Grayson County Detention Center is not a "person" subject to suit under § 1983 because municipal departments, such as jails, are not suable under § 1983. *Compare Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) (holding that a police department may not be sued under § 1983); *see also Marbry v. Corr. Med. Serv.*, No. 99-6706, 2000 WL 1720959 at *2 (6th Cir. Nov. 6, 2000) (holding that a jail is not an entity subject to suit under § 1983). In this situation, it is Grayson County that is the proper defendant in this case. *Smallwood v. Jefferson County Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990) (construing claims brought against the Jefferson County Government, the Jefferson County Fiscal Court, and the Jefferson County

Judge Executive as claims against Jefferson County itself). Further, Grayson County is a "person" for purposes of § 1983. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978). The Court will therefore construe the claims against the Grayson County Detention Center as brought against Grayson County.

When a § 1983 claim is made against a municipality, a court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The Court will address the issues in reverse order.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in *Pembaur*).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v.*

*City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds*, *Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that plaintiff must demonstrate "deliberate conduct").

In the instant case, Plaintiff has failed to allege the existence of a governmental policy or custom relative to the nature of his complaints and claims. Thus, the claims against Grayson County must be dismissed.

### *Claims against Deputy Jailer Woosley*

Plaintiff's only allegations involving Deputy Jailer Woosley are that he met with him after Nurse Wilson was rude to him to complain about Nurse Wilson's behavior and that Deputy Jailer Woosley asked him what he wanted to have done for his vertigo. Plaintiff alleges that he stated that he wanted a second opinion and that he had been told he might benefit from seeing an ENT. Plaintiff then was sent to a nurse practitioner in a doctor's office and had vision and hearing tests ,and in January 2008 he was taken to rehabilitation. Thus, according to Plaintiff, Deputy Jailer Woosley accommodated his request.

Some factual basis for a claim must be set forth in the pleadings. *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986). The specific facts must also explain how the defendant is personally responsible for the alleged injuries. *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985). Plaintiff's complaint fails to explain how Deputy Jailer Woosley is responsible for any injury to him. As such, this claim must be dismissed for a failure to state a claim. *See*

*Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (per curiam) (stating that personal involvement by the defendant is an essential element in a § 1983 cause of action asserting a constitutional deprivation).

***Claim against Nurse Wilson***

Plaintiff alleges that Nurse Wilson was rude to him when he went for a sick call in December 2007. Again, Plaintiff does not make any allegations linking Nurse Wilson to any alleged deprivation of medical care or any constitutional wrong done to him. Rudeness does not rise to the level of constitutional significance. *See Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987). The claim against Nurse Wilson will be dismissed for failure to state a claim upon which relief may be granted.

***Claims against unnamed defendants***

It is unclear what the claims involving his medical treatment against the unnamed nurses are. The Eighth Amendment does not apply to pretrial detainees. *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003). "Under the Fourteenth Amendment Due Process Clause, however, pretrial detainees have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). "In the context of medical care for prisoners and detainees, it is well established that 'deliberate indifference to a prisoner's [or detainee's] serious illness or injury states a cause of action under § 1983.'" *Weaver v. Shadoan*, 340 F.3d at 410 (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)) (alteration in original).

The deliberate indifference standard has been interpreted to require an inmate plaintiff to

show that prison official defendants acted with a reckless disregard of a known risk of serious harm to the prisoner. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The standard includes both objective and subjective components. First, the deprivation of Eighth Amendment rights must be "sufficiently serious" such that the prison officials' acts or omissions objectively result in the denial of "the minimal civilized measure of life's necessities." *Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), and *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Second, the prison officials must have acted with a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298. In other words, a prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997) (quoting *Farmer*, 511 U.S. at 837).

To the extent that Plaintiff is arguing that the unnamed nurses delayed his treatment, his claim fails. A plaintiff can show deliberate indifference by establishing, for example, that the defendants intentionally denied or delayed access to medical care, *see Estelle*, 429 U.S. at 104-05, or that the defendants refused to provide prescribed medication, *see Byrd v. Wilson*, 701 F.2d 592, 595 (6th Cir. 1983). However, with regard to the objective component, an inmate who argues that a delay in medical treatment amounted to an Eighth Amendment violation "'must place verifying medical evidence in the record to establish the detrimental effect of the delay.'" *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001) (citation omitted). Plaintiff has not done so.

To the extent that he is arguing that the unnamed nurses are responsible for stopping his

8

physical therapy, his claim also fails. The allegations in his complaint are clear that it was the U.S. Marshal's Office which was responsible for "disallowing" Plaintiff to continue with physical therapy.

### *Claim regarding being transferred to another prison*

In his supplemental complaint, Plaintiff states that, since he filed his original complaint, he believes that he was moved from the Grayson County Detention Center to the Warren County Jail in retaliation for filing this suit. He states that the move makes the private sector doctors more than an hour away and that the medical staff at the Warren County Jail is unaware of his ailment. He also states that he was not allowed to move certain items, which cost him $50 to replace.

A prisoner has no inherent constitutional right to be confined in a particular prison. *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir. 1995). Nor does a prisoner have a retaliation claim when he is transferred from one prison to another: "[T]ransfer from one prison to another prison 'cannot rise to the level of an "adverse action" because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights.'" *Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (citation omitted).

Because Plaintiff's federal law claim concerning his transfer to the Warren County Jail will be dismissed, the Court declines to exercise its supplemental jurisdiction over Plaintiff's state law claim for the loss of $50. *See* 28 U.S.C. § 1367(c)(3). That claim will be dismissed

9

without prejudice.

The Court will enter a separate Order consistent with this Memorandum Opinion.

Date:

cc:     Plaintiff, *pro se*
        Defendants
        Grayson County Attorney
4414.009